FILED
11/19/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2024 Session

## STATE OF TENNESSEE v. MELVIN CHISM, III

**Appeal from the Circuit Court for Jefferson County**
**No. 2019-CR-14341        Duane Slone, Judge[1]**

---

### No. E2023-00620-CCA-R3-CD

---

A Jefferson County jury convicted the Defendant, Melvin Chism, III, of possession of a firearm by a convicted felon and possession of drug paraphernalia. The Defendant appeals, arguing that (1) the evidence at trial was insufficient to establish that he constructively possessed the firearm; and (2) evidence in this case was obtained in violation of his Fourth Amendment rights when an officer took and retained his identification card without reasonable suspicion that he had committed a crime. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. JAMES CURWOOD WITT, JR., J., not participating.[2]

Nathaniel Evans, Knoxville, Tennessee (on appeal), and Randall F. Crossing, Jefferson City, Tennessee (at trial), for the appellant, Melvin Chism, III.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jimmy Dunn, District Attorney General; and Kelsi Pratt and Brett Bell, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1]    While this appeal has been pending, the trial judge in this case, the Honorable O. Duane Slone of the Fourth Judicial District, passed away on August 25, 2024. We acknowledge his faithful service to the Tennessee judiciary and to our recovery courts in particular.

[2]    The Honorable James Curwood Witt, Jr., passed away on August 17, 2024, and did not participate in the filing of this opinion. For twenty-seven years, Judge Witt dedicated himself to the rule of law and to the work of this court, both as a former presiding judge and as its longest-serving member.

# OPINION

## FACTUAL BACKGROUND

### A. BACKGROUND AND INITIAL ENCOUNTER

In February 2018, Officer Arnold with the White Pine Police Department (WPPD) encountered the Defendant and another individual, Rae Ann Kelley, at a Pilot gas station and convenience store. The officer observed Ms. Kelley behaving erratically, exhibiting loud and restless behavior, which led him to suspect that she was under the influence of narcotics. While the Defendant and Ms. Kelley stood at the cash registers together, they spoke with each other, even hugging at one point. During this time, Defendant said something to Ms. Kelley, to which she responded, "I don't want to. I just want to keep flying. I don't like driving."

Officer Arnold walked outside the store to wait for the Defendant and Ms. Kelley to exit. Once Ms. Kelley completed her purchase, she left the store and approached Officer Arnold, shouting questions about the weather. Ms. Kelley disclosed that she was visiting the area to check on her sister, who had been in an accident. She denied that she was under the influence.

In the meantime, the Defendant also came out of the store. When another officer, Officer Guinn, arrived on the scene, Officer Arnold went to speak with the Defendant. The officer asked the Defendant if Ms. Kelley "was alright," and the Defendant responded, "Yeah. She's alright. She's just always hyper. That's just how she is." When the officer asked him why they were in the area, the Defendant explained that they were returning to Johnson City after visiting his brother's restaurant in Knoxville.

The officer then asked the Defendant for identification, and the Defendant removed a collection of papers from his pocket and began to sift through them. At first, he handed Officer Arnold his parole identification card, but he continued to look for his driver's license. While the Defendant continued to look for a driver's license, Officer Arnold said, "I hope you're driving," to which the Defendant smiled and laughed.

When the Defendant could not find his driver's license, Officer Arnold again indicated that the parole identification card was acceptable. As they were exiting the convenience store, the Defendant asked Officer Arnold what "the issue" was, and Officer Arnold indicated that he was trying to make sure there was "an okay driver" given Ms. Kelley's state and that he was checking the Defendant's driver's license status. The

2

Defendant again smiled, laughed, and said that Ms. Kelley was not driving him anywhere because she was "too hyper."

Officer Arnold retained the identification card to conduct a warrant check. The check revealed that the Defendant's driver's license was suspended but that no warrants were outstanding. Following a warrant check, the officer told the Defendant that he was "free to go," though the officer did not return the card at that time.

Meanwhile, Officer Guinn obtained Ms. Kelley's consent to search her purse. He found an oxycodone bottle containing multiple alprazolam pills and a single oxycodone pill. Ms. Kelley was placed under arrest for possessing these medications without a prescription and detained in a patrol vehicle.

Officer Arnold then conducted an inventory search of Ms. Kelley's vehicle before it was towed. Inside the sunglasses compartment between the front seats, he discovered a .22 caliber handgun and two bags containing a white powdery substance, later confirmed to be cocaine. The officer called the Defendant over and arrested him on suspicion of possessing the drugs and firearm found in the vehicle. In their search of the Defendant's person, officers found digital scales with white residue in his pants pocket. The Defendant denied ownership of the drugs and firearm, claiming that they belonged to Ms. Kelley.

## B. INDICTMENT AND PRETRIAL PROCEEDINGS

In April 2019, a Jefferson County grand jury charged the Defendant with, among other offenses, possession of a firearm by a convicted felon and possession of drug paraphernalia. *See* Tenn. Code Ann. §§ 39-14-103; 39-17-417; 39-17-425; 39-17-1307; 39-17-1324.[3]

Before trial, the Defendant filed a motion to suppress statements made during the encounter and the digital scales discovered on his person. During the October 17, 2022 hearing, defense counsel argued that the officers lacked reasonable suspicion or probable cause to initially approach the Defendant, who was merely "eating a hot dog" and not violating any laws. Defense counsel contended that the Defendant's arrest and search were unlawful because the officers told him he was free to go yet continued to detain him without probable cause.

---

[3] The grand jury also charged the Defendant with possession of a firearm with the intent to commit a dangerous felony; possession of one-half gram or more of a Schedule II controlled substance with intent to sell or deliver; and theft of property valued at $1,000 or less. The jury acquitted the Defendant of the theft offense, and it was unable to reach a verdict on the remaining charges, resulting in a mistrial as to those alleged offenses. None of these charges is at issue in this appeal.

The State argued that the encounter evolved gradually. Officers observed the Defendant and Ms. Kelley's behavior, leading them to develop reasonable suspicion that justified their investigation and subsequent actions. Officers Arnold and Guinn testified to the events of the encounter, including Ms. Kelley's erratic behavior, the conflicting stories about the pair's travel plans, and the eventual discovery of contraband in her vehicle.

The trial court denied the motion, finding that officers had reasonable suspicion to question the Defendant after observing his co-defendant's erratic behavior. It further found that the officers could reasonably believe he drove to the location and did so with a suspended license. The court also found that following Ms. Kelley's arrest, a lawful vehicle search uncovered narcotics and a firearm, providing probable cause for a search of the Defendant. However, the court also suppressed statements made after the Defendant's arrest due to the lack of *Miranda* warnings.

## C.   TRIAL PROCEEDINGS

The Defendant's trial began on January 25, 2023. The State presented body camera footage and testimony from Officers Arnold and Guinn, which corroborated the details of the convenience store encounter. Photographs of the cocaine, firearm, and digital scales were also admitted as evidence.

On cross-examination, Officer Arnold acknowledged that he did not see the Defendant and Ms. Kelley arrive at the convenience store and had not reviewed any surveillance footage to determine if the Defendant had driven the vehicle. He also confirmed that officers did not find fingerprints or any other forensic evidence linking the Defendant to the firearm or drugs.

Following a *Momon* hearing,[4] the Defendant chose not to testify in his own defense. The jury found the Defendant guilty of possession of a firearm by a convicted felon and possession of drug paraphernalia. At a later sentencing hearing, the trial court sentenced the Defendant to a term of twenty-seven years as a Range III, persistent offender for the firearm conviction and eleven months and twenty-nine days for possession of drug paraphernalia. The court ordered that the sentences be served concurrently.

---

[4]     In *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), our supreme court "adopted a prophylactic procedure designed to ensure that a defendant's waiver of the fundamental right to testify is voluntary, knowing, and intelligent." *Mobley v. State*, 397 S.W.3d 70, 90 (Tenn. 2013). In this procedure, trial counsel may make inquiry of the defendant in open court outside the presence of the jury, or the defendant may execute a written waiver of the right to testify. *Momon*, 18 S.W.3d at 162, 175. In this case, the trial court and trial counsel conducted the *Momon* hearing with the Defendant in open court shortly before the defense rested its case.

4

The Defendant filed a timely motion for a new trial, arguing, among other things, that the evidence was insufficient to support his firearm conviction and that his Fourth Amendment rights were violated in an illegal search and seizure. The trial court denied this motion on April 24, 2023, and the Defendant filed a timely notice of appeal four days later.

## ANALYSIS

In this appeal, the Defendant raises two issues. First, he submits that the evidence was legally insufficient to support his conviction for possession of a firearm by a convicted felon. Second, he argues that the evidence in this case was obtained in violation of his Fourth Amendment rights when Officer Arnold took and retained his parole identification card without reasonable suspicion that he had committed a crime. We address each of these issues in turn.

### A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon. He contends there was no proof of his actual or constructive possession of the firearm. He emphasizes that Ms. Kelley owned the vehicle and retained the key fob, that the firearm was concealed in a compartment likely used by the vehicle owner, and that Ms. Kelley exhibited behavior consistent with cocaine use. Additionally, no forensic evidence linked him to the gun or cocaine. In response, the State argues that the proof is legally sufficient to allow a rational juror to find that the Defendant constructively possessed the firearm and drug paraphernalia. We agree with the State.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of

fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2.      Possession Offenses Generally

Count one of the Defendant's indictment charged him with knowingly possessing a firearm while "having a previous conviction for a felony involving the use or attempted use of force, violence, or a deadly weapon[.]" Tenn. Code Ann. § 39-17-1307(b)(1)(A). The Defendant stipulated that he had been convicted of a prior felony involving the use or attempted use of force or a deadly weapon as charged in count one. Thus, the only issue for the jury was whether the Defendant knowingly possessed the firearm.

This court has long recognized that the element of "possession" is really a question about one's *control* over an item or property. *See Peters v. State*, 521 S.W.2d 233, 235 (Tenn. Crim. App. 1974) ("We think that possession means control."). This control can be actual, such as a defendant's physical control over an item. *See State v. Hart*, 676 S.W.3d 103, 108 (Tenn. Crim. App. 2023). However, control can also be constructive, meaning that the defendant has the ability to reduce an object to his or her physical control. *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted); *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) ("In essence, constructive possession is the ability to reduce an object to actual possession."). Constructive possession rests on the totality of the circumstances of each case and may be proven by circumstantial evidence. *See State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013).

Importantly, because possession is about control, a defendant may be subject to criminal liability even if his or her control over an object is not exclusive. *State v. Waggoner*, No. M2013-00731-CCA-R3-CD, 2014 WL 1354938, at *4 (Tenn. Crim. App. Apr. 4, 2014) ("Criminal liability may result from sole possession or joint possession with another person."), *perm. app. denied* (Tenn. Sept. 2, 2014). Instead, criminal liability can exist even if the possession is joint, meaning that more than one person can be considered in possession of an object. *See State v. Young*, No. W2005-01180-CCA-R3-CD, 2006 WL 1132089, at *3 (Tenn. Crim. App. Apr. 26, 2006), *no perm. app. filed*. Thus, with respect to a firearm, joint possession may occur "'only where the personally unarmed participant has the power and ability to exercise control over the firearm.'" *State v. Anderson*, No. M2022-00262-CCA-R3-CD, 2023 WL 2620672, at *5 (Tenn. Crim. App. Mar. 24, 2023) (quoting *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978)), *perm. app. denied* (Tenn. June 28, 2023). However, joint possession "may never exist absent knowledge that the other participant is in the possession of a firearm." *Key*, 563 S.W.2d at 188.

6

Because possession is about control over an object, a defendant's mere presence in an area where the object is discovered, or association with a person who possesses the object is insufficient, without more, to support a finding of constructive possession. *See Robinson*, 400 S.W.3d at 534. Issues as to whether a defendant is in constructive and joint possession of an item are questions of fact for the jury. *See Copeland*, 677 S.W.2d at 476; *State v. Peters*, No. W2018-01328-CCA-R3-CD, 2019 WL 3775872, at *4 (Tenn. Crim. App. Aug. 9, 2019), *no perm. app. filed*.

### 3.    The Defendant's Constructive Possession of the Firearm

Viewing the evidence in the light most favorable to the State, a rational juror could find that the Defendant was in constructive possession of the handgun. Drawing all reasonable inferences in favor of the State as we are required to do, the evidence established that the Defendant was aware of the weapon's presence and had the power and ability to exercise control over the firearm. *Key*, 563 S.W.2d at 188.

For example, with respect to the Defendant's knowledge, a rational juror reasonably could have found that the Defendant drove and was in control of the car from his statement that Ms. Kelley was not driving him anywhere because she was "too hyper."[5] From his control of the car, a rational juror could then have inferred the Defendant's knowledge of the weapon in the vehicle. As this court has recognized, "[w]hen the defendant is charged with possession of contraband located in a vehicle, '[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted.'" *State v. Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, *5 (Tenn. Crim. App. Jan. 27, 2022) (quoting *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995)), *no perm. app. filed*. Indeed, we have affirmed convictions for possession where an important fact was that the defendant was the driver or in control of the vehicle at issue. *Id.*; *State v. Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *10-11 (Tenn. Crim. App. Feb. 11, 2019) (concluding that the driver of a rental vehicle containing over $1,000 worth of drugs constructively possessed the drugs when he was apprehended after letting a passenger out, parking, and entering a mall), *perm. app. denied* (Tenn. May 16, 2018); *State v. Triplett*, No. W2015-00163-CCA-R3-CD, 2015 WL 9489506 (Tenn. Crim. App. Dec. 29, 2015) (holding that the State

---

[5]    The Defendant challenges the admission of these statements, as well as the digital scales, as having been obtained as the result of an illegal detention. As we discuss below, the Defendant's detention was lawful, and these statements were therefore admissible. However, in reviewing the legal sufficiency of the convicting evidence, the question must be examined in light of all the evidence presented to the jury, even evidence that would otherwise be subject to suppression. *See State v. McLawhorn*, 636 S.W.3d 210, 237 (Tenn. Crim. App. 2020) ("At the outset, we acknowledge our conclusion in Section II below that the trial court erred in denying the motion to suppress the evidence obtained from the search of the Defendant's cell phone. Thus, this evidence was erroneously admitted at the trial. However, we evaluate the sufficiency of the evidence in light of all of the evidence presented to the jury, including the improperly admitted evidence." (citation omitted)).

presented sufficient proof to support a conviction of unlawful possession of a weapon by a convicted felon when a handgun was found in the glove box of the car the defendant was driving), *perm. app. denied* (Tenn. Mar. 23, 2016); *State v. Davis*, No. W2008-00226-CCA-R3-CD, 2009 WL 160927, at *6 (Tenn. Crim. App. Jan. 23, 2009) (holding that the evidence was sufficient despite the defendant's testimony that the contraband belonged to the passenger because the defendant owned and was driving the vehicle and the contraband was within his reach), *perm. app. denied* (Tenn. June 15, 2009)). Consistent with these principles, we have also recognized that "[a] defendant can constructively possess contraband found in a vehicle the defendant is driving, even if the vehicle belongs to another person." *State v. Martinez*, 372 S.W.3d 598, 606 (Tenn. Crim. App. 2011).

Even apart from his being in control of the car, a rational juror could have found that the Defendant was aware of the drugs in the car and was, therefore, aware of the handgun stored with them. For example, when officers located the cocaine and firearm in the car, they also found a straw with powder residue, and Officer Guinn associated this straw with cocaine use. When Ms. Kelley was at the convenience store with the Defendant, she appeared visibly intoxicated to Officer Arnold, and a rational juror could infer that she had recently used and was under the influence of a controlled substance. During a search of the Defendant's person following his arrest, officers found digital scales with cocaine residue in his pocket, from which a rational juror could have inferred that the Defendant had recently weighed a controlled substance. From these facts, a rational juror could have concluded that Ms. Kelley had recently used cocaine, that the Defendant knew of this drug use, and that both she and the Defendant knew of the cocaine in the car—and therefore also knew of the weapon stored with the cocaine.

In addition to the Defendant's knowledge of the firearm in the car, a rational juror could have found that the Defendant had the power and ability to exercise control over the firearm. In their search of the car, officers located the weapon in the sunglasses case between the Defendant and Ms. Kelley, well within the Defendant's reach. A rational juror could have inferred that the Defendant had the ability to easily and immediately reduce the weapon to his actual physical possession.

Important to this analysis is the standard of appellate review, which seeks to preserve "the factfinder's role as weigher of the evidence[.]" *Jackson*, 443 U.S. at 319. In this role, the jury can consider the evidence introduced at trial "in light of their own experience and knowledge." *State v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013). Indeed, "jurors are free to use their common knowledge and judgment derived from experience, observation, and reflection to decide whether a fact is logically deducible or reasonably inferred from the evidence." *State v. Nesbit*, 978 S.W.2d 872, 886 (Tenn. 1998).

Our role is different. This court does not "make its own subjective determination of guilt or innocence[.]" *Jackson*, 443 U.S. at 319 n.13; *State v. Hamrick*, 688 S.W.2d 477,

481 (Tenn. Crim. App. 1985). We do not weigh evidence or draw independent inferences from the facts. *Dorantes*, 331 S.W.3d at 379. Instead, we ask whether any rational trier of fact could reach the *jury's conclusion* when all the evidence is viewed in the light most favorable to the State and all reasonable inferences are drawn in its favor. *Jackson*, 443 U.S. at 319; *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("Under *Jackson*, the use of the word 'could' focuses the inquiry on the power of the trier of fact to reach its conclusion."). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (also recognizing that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

In this case, a rational juror could have drawn several reasonable conclusions from the evidence using his or her own experience, observation, and reflection. Indeed, multiple plausible theories point to the conclusion that the Defendant knowingly had the power and ability to exercise control over the firearm. Thus, even if we disagreed with the jury's weighing of the evidence—and we do not—"the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). We conclude that the evidence presented by the State and the reasonable inferences drawn by the jury certainly clear the threshold of "bare rationality." *See also State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023) ("Although the evidence is not overwhelming, our standard of review does not require it to be.").

In arguing that the evidence is insufficient to prove he possessed the firearm, the Defendant principally relies on two opinions from this court: *State v. Jones*, No. W2018-01421-CCA-R3-CD, 2020 WL 974197 (Tenn. Crim. App. Feb. 27, 2020), *no perm. app. filed* and *State v. Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354 (Tenn. Crim. App. Jan. 27, 2022), *no perm. app. filed*. In *Jones*, this court held that insufficient evidence existed to support a conviction for possessing drugs and a firearm found in a motel room due to a lack of proof linking him to the room, such as rental information, a key, or personal belongings. *Jones*, 2020 WL 974197, at *1. In *Siner*, this court also deemed evidence insufficient when drugs and a firearm were found in a car where the defendant was a passenger, noting that he was neither the owner nor operator and that there was no indication he accessed or was aware of the items. *Siner*, 2022 WL 252354, at *7. In both cases, we emphasized that the defendant's mere presence in a location with contraband, without more, was insufficient evidence of possession or control.

This case is unlike *Jones* or *Siner*. Importantly, *Siner* noted that a jury may infer possession of items in a car by the person controlling the vehicle. *Siner*, 2022 WL 252354, at *5. *Siner* also recognized that "when another person is committing visibly criminal acts in the presence of the accused, then the chances are substantially greater that a companion of the offender is something more than a mere bystander." *Siner*, 2022 WL 252354, at *6 (citation and internal quotation marks omitted). Unlike *Jones* or *Siner*, the facts and

reasonable inferences drawn from those facts in the present case allow a rational juror to find that the Defendant knew of the firearm in the car and could easily and immediately reduce that weapon to his actual possession.

Accordingly, we conclude that the evidence is legally sufficient to support the Defendant's conviction for unlawful possession of a firearm. The Defendant is not entitled to relief.

## B. SUPPRESSION OF EVIDENCE

The Defendant next argues the trial court should have suppressed his post-seizure statements and the digital scales found on him, contending they were obtained in violation of the Fourth Amendment. He asserts that he was seized when Officer Arnold retained his parole identification card, and because the officer lacked reasonable suspicion to detain him, no evidence derived from that detention should have been used at trial. He also argues that because officers lacked probable cause to arrest him later, the seizure of the scales from his pocket cannot be sustained on the basis of a search incident to an arrest.

In response, the State argues that the investigatory stop was proper and based upon reasonable suspicion that the Defendant had committed a crime. It also asserts that the Defendant has waived any issue regarding the search incident to his arrest. We agree with the State on both issues.

### 1. Standard of Appellate Review

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In reviewing a trial court's ruling on a motion to suppress evidence, "we will uphold the trial court's findings of fact unless the evidence preponderates against those findings." *State v. Stanfield*, 554 S.W.3d 1, 8 (Tenn. 2018). The party prevailing in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing[,] as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "[I]n evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). Nevertheless, "[d]espite the deference given to [the] trial court's findings of fact, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness." *State v. Henry*, 539 S.W.3d 223, 232 (Tenn. Crim. App. 2017) (citing *State v. Montgomery*, 462 S.W.3d 482, 486 (Tenn. 2015)).

10

## 2. Protections Against Unreasonable Searches and Seizures

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Likewise, Article I, section 7 of the Tennessee Constitution ensures that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures[.]" Our supreme court has held that Article I, section 7 is "identical in intent and purpose to the Fourth Amendment." *State v. Tuttle*, 515 S.W.3d 282, 307 (Tenn. 2017).

These constitutional provisions are designed "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (citation omitted); *Stanfield*, 554 S.W.3d at 8. Because "a warrant is normally required when a police officer intrudes upon the privacy of a citizen," warrantless searches and seizures, as here, are presumptively unreasonable, and any evidence obtained as a result of a warrantless action is subject to suppression. *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). However, if the State "demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement," then the evidence will not be suppressed. *State v. Williamson*, 368 S.W.3d 468, 474 (Tenn. 2012).

## 3. Investigative Detention

The Defendant first argues that the trial court erred in not suppressing statements he made to officers after Officer Arnold unlawfully seized him. To address this issue, we must first determine whether, and at what point, the Defendant was seized. Then, we must determine whether that seizure was supported by a recognized exception to the warrant requirement. We address each of these issues in turn.

### a. When was the Defendant Seized?

Not every interaction between a person and a police officer amounts to a "seizure" under the Fourth Amendment. As the United States Supreme Court has made clear, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Thus, when an officer approaches an individual in a public place, they do not violate the Fourth Amendment "by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer*, 460 U.S. 491, 497 (1983) (citation omitted). These types of "voluntary encounters"

11

are not considered a seizure under the Fourth Amendment because the citizen is free to engage or disregard the officer. *See State v. Daniel*, 12 S.W.3d 420, 425-26 (Tenn. 2000); *see also State v. Mendenhall*, 446 U.S. 544, 552-53 (1980) (noting that no justification is required for voluntary police-citizen encounters).

Of course, "what begins as a consensual police-citizen encounter may mature into a seizure of the person." *Daniel*, 12 S.W.3d at 427. For example, when an officer asks for and then retains a person's identification, this conduct effectively immobilizes the person and accomplishes a Fourth Amendment seizure. *Id.* at 427-28 (collecting cases). After all, "[a]bandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society," and "no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification." *Id.* at 427 (citations omitted).

In this case, Officer Arnold initially approached Ms. Kelley outside the store before questioning the Defendant. The officer then requested the Defendant's identification, and the Defendant provided him with a parole identification card. The officer retained the card to run a warrant check without returning it to the Defendant, even as the Defendant briefly moved around the store. In this circumstance, Officer Arnold was free to approach the Defendant, engage in conversation, and even ask for identification. However, when the officer retained the Defendant's identification card to conduct a warrant check, the Defendant was effectively seized, as his freedom to leave without it was restricted.

Pressing against this conclusion, the State asserts that any seizure ended when Officer Arnold told the Defendant that he was free to leave, and the Defendant then walked through the convenience store. We respectfully disagree. There is no indication in the record that the Defendant was willing to "give up" his identification card to the officer and simply leave the scene of the encounter. *See Commonwealth v. Lyles*, 905 N.E.2d 1106, 1110 (Mass. 2009) ("A reasonable person simply would not relinquish his identification to the police and continue on with his business. Moreover, it is unlikely that a reasonable person, who will not be versed in the intricacies of the law of search and seizure, would feel free to ask for the immediate return of his identification from a police officer, regardless of whether the officer is standing next to him or is several feet away in a patrol car."). Indeed, the *Daniel* Court similarly found a seizure does not end simply because the officer allows the seized person to go inside the market to use the restroom and buy a soft drink. *See Daniel*, 12 S.W.3d at 423. Similar to *Daniel*, the Defendant was effectively immobilized and not free to leave without his identification. A review of the totality of the circumstances demonstrates that what began as a consensual encounter developed into a seizure when Officer Arnold retained the Defendant's parole identification card to ascertain the Defendant's driver's license status and whether he had any active warrants.

### b. Was the Defendant's Seizure Supported by Reasonable Suspicion?

Having concluded that the Defendant was seized, we must now determine whether Officer Arnold's actions were supported by reasonable suspicion when he took and retained the Defendant's identification to conduct a status check. The Defendant argues that the limited information Officer Arnold had at the time—Ms. Kelley's apparent intoxication and the inconsistent statements regarding their travel—did not provide reasonable suspicion of criminal activity. We respectfully disagree.

One well-recognized exception to the warrant requirement exists "when a law enforcement officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Davis*, 354 S.W.3d 718, 727 (Tenn. 2011) (citation and internal quotation marks omitted). The evaluation of whether a police officer has reasonable suspicion must be based on the totality of the circumstances, *State v. Day*, 263 S.W.3d 891 (Tenn. 2008), and the "content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion," *State v. Keith*, 978 S.W.2d 861, 867 (Tenn. 1998). As our supreme court has recognized, reasonable suspicion

> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Davis*, 354 S.W.3d at 727 (citation and internal quotation marks omitted).

These specific and articulable facts must be judged by an objective standard, not the subjective beliefs of the officer making the investigative seizure. *State v. Norword*, 938 S.W.2d 23 (Tenn. Crim. App. 1996). Indeed, under all circumstances, the officer must be able "to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification" to justify the seizure. *State v. Yeargan*, 958 S.W.2d 626, 632 (Tenn. 1997).

The objective facts on which an officer may rely can include information personally known to him or her or obtained from his or her own observations. It may also include information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Davis*, 354 S.W.3d 718, 727 (Tenn. 2011). A court reviewing whether reasonable suspicion existed at the time of the seizure "must also

consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." *Id.* at 728 (citation and internal quotation marks omitted).

In this case, Officer Arnold observed Ms. Kelley's erratic behavior in the store, including her loud and fast speech. He also saw her interactions with customers and employees, who appeared annoyed and looked to Officer Arnold for assistance. Based on his training and experience, Officer Arnold believed that Ms. Kelley was under the influence of drugs. He continued to watch as she and the Defendant interacted in the check-out line, even hugging at one point. After Ms. Kelley told the Defendant, "I don't want to. I just want to keep flying. I don't like driving," Officer Arnold decided to wait for them outside.

Once outside, Ms. Kelley approached Officer Arnold, shouting questions about the weather. Moments later, the Defendant exited the store and stood nearby, eating a hot dog. Officer Arnold then questioned the Defendant, who explained that they were returning to Johnson City after visiting a restaurant in Knoxville. This account contradicted Ms. Kelley's statement that she was visiting her sister, who had been in an accident. *Cf. State v. Green*, 697 S.W.3d 634, 645 (Tenn. 2024) ("Responses to questioning by police officers are a common source of probable cause determinations." (citation, alterations, and internal quotation marks omitted)). At this point, Officer Arnold then requested the Defendant's identification.

As we recognized above, Officer Arnold's initial questioning and request for identification did not constitute a seizure. However, when the Defendant could not produce a driver's license, Officer Arnold retained his parole ID to check his driver's license status and for any active warrants. At the time Officer Arnold retained the identification card, he knew of Ms. Kelley's behavior indicating intoxication and her statement about wanting to "keep flying" rather than drive. He also knew that the parties had made inconsistent statements about the purpose of their trip and that the Defendant could not produce a driver's license when asked for identification.

Based on the totality of the circumstances, Officer Arnold reasonably suspected that the Defendant had committed, or was about to commit, a crime. *See* Tenn. Code Ann. § 55-50-351 (requiring licensed drivers to carry their license when operating a vehicle). Importantly, the level of suspicion required "is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (citation and internal quotation marks omitted). This is plainly not a case in which the officer had only an inchoate and unparticularized suspicion or hunch. As such, we conclude that the officer had the authority to temporarily detain the Defendant to conduct further investigation to confirm or dispel

14

that suspicion. We respectfully affirm the trial court's denial of the Defendant's motion to suppress evidence.

### c.      Waiver of Claim for Search Incident to Arrest

The Defendant next challenges whether the seizure of the scales from his pocket was justified pursuant to a search incident to an arrest. More specifically, he argues in his reply brief that the officers did not possess probable cause to believe he had committed a crime at the point they searched his person. We conclude that this issue has been waived because the Defendant did not support the issue with any argument or citation to authorities in his principal brief.

In his broad issue statement, the Defendant appears to raise an issue with the seizure of the scales.[6] However, this court has made clear that "[s]imply raising an issue is not sufficient to preserve it for appellate review." *State v. Enoch*, No. W2023-01032-CCA-R3-CD, 2024 WL 3261421, at *9 (Tenn. Crim. App. July 1, 2024), *no perm. app. filed*. Instead, Tennessee Rule of Appellate Procedure 27(a)(7) also requires that the appellant set forth an argument for each issue, setting forth the "reasons why the contentions require appellate relief" and containing "citations to the authorities and appropriate references to the record[.]" Reinforcing this requirement, Rule 10(b) of the rules of this court cautions that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022) (finding waiver when the defendant did not "make any argument in support of this issue in his brief" and did not "cite to any authorities or appropriate references in the record"), *no perm. app. filed*.

In his principal brief, the Defendant does not present an argument with respect to his arrest or the search of his person incident to that arrest. For example, he cites no cases and does not analyze whether his arrest was supported by probable cause. In fact, the term "probable cause" does not appear at all in his brief except when quoting the language of the Fourth Amendment itself.

---

[6]     The broad issue raised by the Defendant is identified as follows: "Evidence including statements made by [the Defendant], scales, and statements of co-conspirator should have been suppressed as they were obtained in violation of [the Defendant's] rights against unlawful searches and seizures pursuant to the Tennessee Constitution and the United States Constitution." We caution against the use of such broadly worded issue statements and urge that "issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver." *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024) (citation and internal quotation marks omitted).

Instead, the Defendant includes a two-page argument about the seizure of the scales in his reply brief, apparently in response to the State's observation that he conceded the issue of probable cause supporting his arrest. However, our supreme court has made clear that where an appellant "only fully asserts and briefs [a] claim in [the] reply brief," the issue is waived. *Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017); *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). After all, permitting an appellant to advance new arguments in a reply brief, as here, is "fundamentally unfair[,] as the appellee may not respond to a reply brief." *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991).

Because of the inadequacy of the Defendant's brief, we must respectfully conclude that the Defendant has waived appellate consideration of whether the scales were properly seized as part of a search incident to arrest. *See Molthan*, 2022 WL 17245128, at *2. The Defendant is not entitled to relief on this issue.

## CONCLUSION

In summary, we also hold that the evidence was legally sufficient to support the Defendant's convictions for possession of a firearm by a convicted felon and possession of drug paraphernalia. We also hold that the trial court properly denied the Defendant's motion to suppress evidence. Accordingly, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

16